IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

THE HANOVER INSURANCE )
COMPANY, )
             )
           Plaintiff, )
             )
vs. )  Case No.  Case No. 1:20CV192 ACL
             )
FIRST MIDWEST BANK OF POPLAR )
BLUFF and DENNIS YOUNG, )
             )
          Defendants. )

## MEMORANDUM AND ORDER

This matter is before the Court on the following motions:  Defendant First Midwest Bank of Poplar Bluff's ("First Midwest") Motion to Dismiss or to Refer this Case to Bankruptcy Court (Doc. 7); Defendant Dennis Young's Motion to Dismiss or to Refer this Case to Bankruptcy Court (Doc. 15); and Plaintiff The Hanover Insurance Company's ("Hanover") Motion for Leave to Amend Complaint (Doc. 28).

### I.    Background

#### *Factual Background*[1]

Hanover issued payment bonds and performance bonds to Harding Enterprises, LLC ("Harding Enterprises") for multiple public construction projects for which Harding Enterprises won bids and performed work.  Hanover issued the bonds to guarantee Harding Enterprises' performance obligations on these bonded projects and to ensure the payment obligations Harding Enterprises had to its subcontractors and material suppliers.  In consideration of the issuance of

---

[1]The Court's summary of the facts is taken from the Complaint, assumed as true for the purpose of the instant motions only.

these bonds, Greggory Harding and Dawn Harding ("Hardings"), members of Harding Enterprises, each executed a General Agreement of Indemnity ("GAI") in favor of Hanover.

When Harding Enterprises began to struggle financially, the Hardings requested that Hanover provide Harding Enterprises with financial assistance to complete the performance of the work on the bonded projects.  Hanover and the Hardings entered into a Financing and Special Account Agreement on August 26, 2016 ("Financing Agreement").  Pursuant to the terms and conditions of the Financing Agreement, Hanover paid claims and advanced funds to Harding Enterprises in the total amount of $3,807,673.03.  These funds were to be used by Harding Enterprises for the sole purpose of paying labor and material costs incurred by it to perform work on the bonded contracts.

Harding Enterprises ultimately failed to complete performance or pay its subcontractors and suppliers, which constituted a default under the GAI.  As a result, Hanover's obligations under the bonds was triggered.  Hanover completed Harding Enterprises' performance obligations on the bonded projects and paid payment bond claims of subcontractors and suppliers.  Hanover suffered losses exceeding $5,000,000.  Hanover demanded collateral and reimbursement from the Hardings in the amount of $4,975,000, pursuant to its rights under the GAI.  The Hardings failed to post any collateral or reimburse Hanover.

 In October 2016, Hanover discovered that the Hardings were misappropriating large sums of money they received from the bonded projects owners and from Hanover that were expressly required to have been used for Harding Enterprises' performances obligations on the bonded projects and payment to bonded subcontractors and suppliers (collectively, the "Bonded Proceeds").  After nearly all of the Bonded Proceeds had been paid by the bonded project owners to Harding Enterprises and then misappropriated, Hanover discovered the extent of the scheme.

Specifically, Hanover discovered that the Hardings had used cashier's checks and other forms of transfer to move the Bonded Proceeds through the financial system, ending in payments to the Hardings; the Hardings' son, Josh Harding; the Hardings' benefactor, Mr. Young; the Hardings' lender, First Midwest; and for the benefit of their newly purchased ranch, Diamond H. Ranch.

The evidence regarding the fraudulent transfers was discovered through tracing analysis performed by Hanover during its prosecution of an Adversary Proceeding filed in the Hardings' bankruptcy case.  Mr. and Mrs. Harding filed a Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code on February 26, 2018.  On March 19, 2018, Harding Enterprises filed a voluntary petition for relief under Chapter 7.  During a hearing in the Hardings' bankruptcy proceedings, the Hardings testified that they engaged in so many cashier's check transactions to prevent the funds from being garnished or seized by creditors.

Hanover alleges that First Midwest knowingly received and benefited from the Hardings' transfer of Bonded Proceeds.  From July 2016 through January 2017, First Midwest issued over one hundred cashier's checks totaling $2,871,957 to the Hardings.  Hanover asserts that Young also benefitted from the receipt of Bonded Proceeds because the Hardings' loan indebtedness to him was paid.  Hanover contends that Young knew or was complicit with the Hardings' scheme to misappropriate the Bonded Proceeds and was closely involved in Harding Enterprises' bonded work.

### *Procedural History*

On September 4, 2020, Hanover filed the instant Complaint against Defendants First Midwest and Dennis Young.  (Doc. 1.)  In Count I of the Complaint, Hanover seeks to avoid and attach payments received by Defendant First Midwest that Harding Enterprises allegedly made with the intent to hinder, delay and defraud its creditors, including Hanover.  In Count II,

3

Hanover seeks to avoid and attach payments received by Defendant Young that Harding Enterprises allegedly made with the intent to hinder, delay, and defraud its creditors, including Hanover.  Hanover seeks relief for both counts under Section 428.039 of the Missouri Revised Statutes (the "Missouri Uniform Fraudulent Transfer Act" or "MUFTA").

First Midwest filed the instant Motion to Dismiss or to Refer this Case to Bankruptcy Court on September 29, 2020.  First Midwest argues that the Court should dismiss Count I pursuant to Federal Rule of Civil Procedure 12(b)(1) because Hanover lacks standing to assert the claim.  In the alternative, First Midwest requests that the Court refer this action to the United States Bankruptcy Court for the Eastern District of Missouri ("Bankruptcy Court") pursuant to 28 U.S.C. § 157(a) and Rule 9.01(B)(1) of this Court's Local Rules.  On October 14, 2020, Defendant Young filed a Motion to Dismiss Count II of the Complaint, in which he makes the same arguments for dismissal or referral to Bankruptcy Court as First Midwest.  (Doc. 15.) Pursuant to this Court's order (Doc. 24), the  parties provided supplemental briefing on certain issues implicated by the Motions (Docs. 25, 26, 27, 30).

On February 5, 2021, Hanover filed its Motion for Leave to Amend Complaint, in which it seeks leave to add two claims against Defendant First Midwest.  (Doc. 28.)  First Midwest opposes the Motion.  (Doc. 31.)

On July 14, 2021, the parties filed a Stipulated Motion to Stay all Proceedings until there is a ruling on First Midwest's Objection to Notice of Abandonment, which was pending in the Bankruptcy Court in connection with the Hardings' Chapter 7 Bankruptcy.  (Doc. 36.)  The Court granted the Stipulated Motion on July 19, 2021, and stayed all proceedings in this matter. (Doc. 38.)

The parties filed a Joint Memorandum on September 14, 2021, notifying the Court that the Bankruptcy Court[2] issued an order granting the Trustee's request to abandon property of the estate.  (Doc. 39.)  As a result, this Court lifted the July 19, 2021 stay and held a scheduling conference on November 3, 2021.  (Doc. 43.)

## II.    Discussion

The undersigned will address the pending motions in turn.

### A.  Motions to Dismiss

Defendants argue that Hanover lacks standing to assert its claims in this action because an action to recover allegedly fraudulent payments made by Harding Enterprises is property of the bankruptcy estate of Harding Enterprises.  Defendants contend that only the trustee duly appointed in the Harding Enterprises Bankruptcy Case has authority to prosecute an action to recover property of the bankruptcy estate.  Defendants therefore request that this Court dismiss Hanover's claims for lack of subject matter jurisdiction.  In the alternative, Defendants request that the Court refer this action to the Bankruptcy Court.

As previously noted, the Bankruptcy Court granted the Trustee's request to abandon property of the estate.  (Doc. 39.)  The property of the estate abandoned was described as "any and all causes of action of any type or kind which may exist against First Midwest Bank of Poplar Bluff."  (Doc. 39-1 at 1.)

During the Rule 16 Conference in this case, the undersigned inquired of counsel for each Defendant how the Bankruptcy Court's ruling impacted their motions to dismiss pending in this action.  Counsel for each defendant responded that their respective motions to dismiss were rendered moot by the Bankruptcy Court's decision.

---

[2]United States Bankruptcy Judge Barry S. Schermer.

Thus, Defendants' Motions to Dismiss or Refer this Case to Bankruptcy Court (Docs. 7, 15) will be denied as moot.

### B. Motion to Amend Complaint

Hanover requests leave to amend its Complaint  to add claims against Defendant First Midwest.  Hanover states that it has identified the following two additional causes of action, sounding in tort, which it seeks to bring against First Midwest: Aiding and Abetting in the Commission of Conversion (Count III) and Civil Conspiracy to Commit Conversion (Count IV). Hanover has attached the proposed First Amended Complaint to its Motion.  (Doc. 28-1.)

First Midwest opposes Hanover's request to amend its Complaint.  First Midwest first argues that amendment of the Complaint is futile, because both of the new causes of action fail to state a claim.  First Midwest also argues that Hanover's bad faith, dilatory motive, and repeated failures to cure deficiencies warrant denial of leave to amend.  Additionally, First Midwest contends that the filing of the proposed First Amendment Complaint is barred by the claim-splitting doctrine, which prevents a plaintiff from suing a defendant in two different causes of action based on the same set of facts.

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).  "Unless there is a good reason for denial, ...leave to amend should be granted." *Brown v. Wallace,* 957 F.2d 564, 566 (8th Cir. 1992). Although Rule 15(a) allows liberal amendment, the Court has discretion whether to grant leave. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, (1971).  Factors to consider in determining whether leave to amend should be granted include but are not limited to (1) whether the motion was filed in bad faith or with dilatory motive; (2) whether the motion was filed with undue delay; (3) whether leave to amend would be unduly prejudicial to the opposing parties;

and (4) whether the proposed amendment would be futile.  *See Bell v. Allstate Life Ins. Co.,* 160 F.3d 452, 454 (8th Cir. 1998).

### 1.  Bad Faith and Dilatory Motive

First Midwest argues that Hanover's Motion to Amend its Complaint should be denied due to Hanover's alleged bad faith and dilatory motive.  In support of this claim, First Midwest provides a lengthy summary of previous actions filed by Hanover against defendants other than First Midwest related to the Bonded Proceeds.  First Midwest contends that Hanover has long known the facts that form the basis of its proposed new counts but has failed to allege these claims against First Midwest in the previous actions.  According to First Midwest, "it is clear that Hanover is only now seeking leave to add new counts because the existing fraudulent conveyance count in the Complaint is the subject of a fully briefed motion to dismiss."  (Doc. 31 at 12.)

Hanover responds that First Midwest has presented no evidence of undue delay, bad faith, or undue prejudice.  Hanover contends that, at this early stage in the litigation, the prejudice that Hanover would suffer if the Court were not to allow the amendment is substantially greater than any burden First Midwest may bear as a result of the amendment.

The undersigned finds that First Midwest has failed to demonstrate that Hanover's request to amend its Complaint was motivated by bad faith or a dilatory motive.  The fact that Hanover has engaged in extensive litigation in an effort to recover the Bonded Proceeds does not establish bad faith on its part.  Similarly, First Midwest has not shown that the amendments should be barred by the "claim-splitting doctrine."  The only other action filed by Hanover against First Midwest was an Adversary Proceeding that Hanover dismissed before it was resolved.   Further, First Midwest's allegation that Hanover is only seeking to add claims

because First Midwest's fully briefed motion to dismiss is pending fails, as the motion to dismiss has been denied as moot.  Hanover's request to amend its Complaint is timely, as it was filed prior to the Rule 16 Conference and entry of the Case Management Order.   The deadline to amend the Complaint does not expire until January 31, 2022.  Thus, First Midwest has failed to demonstrate bad faith or dilatory motive as a basis to deny Hanover's request to amend its Complaint.

### 2.  Futility

First Midwest next argues that the Court should deny Hanover's Motion because the amendment would be futile, as Counts I, III, and IV fail to state causes of action.

A proposed claim is futile when it could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *J-McDaniel Constr. Co. v. Mid-Continent Cas. Co.*, 761 F.3d 916, 919 (8th Cir. 2014); *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010).  The proposed claim must therefore satisfy the pleading standards laid out in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). *Zutz*, 601 F.3d at 850-51.  Under those cases, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  Thus, "although a complaint need not include detailed factual allegations, 'a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"  *C.N. v. Willmar Pub. Schs., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 629-30 (8th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).

### a.  Count I

Count I of the proposed First Amended Complaint—which is identical to Count I of the original Complaint—seeks to avoid and attach payments received by First Midwest Bank that Harding Enterprises allegedly made to defraud its creditors.  Hanover seeks relief under Section 428.039 of the MUFTA.

First Midwest argues that Count I fails to state a cause of action.  In support, First Midwest raises the same argument made in support of its Motion to Dismiss.  In light of the Bankruptcy Court's ruling and this Court's denial of First Midwest's Motion to Dismiss as moot, First Midwest's arguments fail.

### b.  Count III

In Count III of the proposed First Amended Complaint, Hanover alleges a Civil Conspiracy to Commit Tortious Acts claim against First Midwest.

The elements of a civil conspiracy claim are: "(1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful overt acts, and (5) resulting damages. The essence of a civil conspiracy is an *unlawful* act agreed upon by two or more persons." *Aguilar v. PNC Bank, N.A.*, 853 F.3d 390, 403 (8th Cir. 2017) (quoting *Mackey v. Mackey*, 914 S.W.2d 48, 50 (Mo. Ct. App. 1996)) (emphasis in original).

The proposed First Amended Complaint alleges that First Midwest agreed to engage with Harding Enterprises and the Hardings in an unlawful check scheme with the purpose of defrauding creditors.  (Doc. 28-1 at 19.)  Hanover alleges that it was damaged as a result.  *Id.*

9

First Midwest argues that Count III fails to state a claim because Hanover names First Midwest as the only conspiring defendant.  Hanover responds that two defendants need not be named in order to assert a claim for civil conspiracy.

It is true that, "[s]trictly speaking, the fact of conspiracy is not actionable, but the action sounds in tort and is in the nature of an action on the case upon the wrong done under the conspiracy alleged." *Envirotech, Inc. v. Thomas*, 259 S.W.3d 577, 586 (Mo. App. E. Dist. 2008) Under Missouri law, "[j]oint action may be maintained against conspirators for damages caused by their wrongful act, *but all the conspirators need not be joined; an action may be maintained against but one.*" *Id.* (quoting *Grubb v. Curry,* 72 S.W.2d 863, 864 (Mo. Ct. App. 1934)) (emphasis added).  Here, Hanover alleges that First Midwest, along with others, engaged in an unlawful check scheme to defraud Hanover.  These allegations set forth all the necessary elements of a civil conspiracy claim.  Hanover's claim does not fail because it does not name a conspirator as a defendant in this action.

First Midwest next contends that Count III fails to state a claim because Hanover has not sufficiently alleged an agreement or meeting of the minds between First Midwest and any other party.

Count III of the proposed First Amended Complaint alleges as follows, in relevant part:

> By wittingly engaging in so many cashier's check transactions by which the same cashier's checks were bought and sold and exchanged in a clear chain of title, *FMB agreed to engage and did engage with Harding Enterprises, LLC, Greggory Harding, Dawn Harding, Dimond H. Ranch and others in unlawful acts* and/or FMB engaged in unlawful means (money laundering) to do lawful acts (provide banking services to a cherished client).

(Doc. 28-1 at 19) (emphasis added).  The background section of the proposed First Amended Complaint provides additional details supporting Hanover's allegations that First Midwest knowingly received and then benefitted from the transfer of the Bonded Proceeds.  *Id.* at 9-15.

10

Hanover's allegations sufficiently allege that First Midwest agreed to engage in a fraudulent scheme with Harding Enterprises and others.  Although Hanover may not be able to ultimately support these allegations, they are sufficient at this stage to state a plausible claim for civil conspiracy to commit a tortious act.

### c.  Count IV

Count IV of the proposed First Amended Complaint sets forth a claim against First Midwest for "Aiding and Abetting a Breach of Fiduciary Duty."  (Doc.. 28-1 at 20.)

First Midwest argues that Count IV fails to state a claim because Missouri law does not recognize this theory of liability.

The Eighth Circuit recently concluded the Missouri Supreme Court would not recognize a claim for aiding and abetting breach of fiduciary duty under the Restatement (Second) of Torts. *Jo Ann Howard & Assocs., P.C. v. Cassity*, 868 F.3d 637, 650-51 (8th Cir. 2017); *see also Cardinal Health 110, LLC v. Premiere Healthcare, LLC*, No. 18-CV-165, 2019 WL 108837, at *7 (E.D. Mo. Jan. 4, 2019) (following the Eighth Circuit's decision, and finding the Missouri Supreme Court would not recognize a cause of action for aiding and abetting breach of fiduciary duty); *Enslein ex rel. Xurex, Inc. v. Di Mase* , No. 16-09020-CV-W-ODS, 2019 WL 2505052, at *31 (W.D. Mo. June 17, 2019) (same); *Bader Farms., Inc v. Monsanto Co.*, No. 16-CV-299, 2019 WL 3017425, at *7 (E.D. Mo. Nov. 8, 2021) (same).

Because Missouri does not recognize a claim for aiding and abetting a breach of fiduciary duty, Count IV fails to state a claim for which relief can be granted.  As such, Hanover's request to add Count IV will be denied as futile.

Accordingly,

**IS HEREBY ORDERED** that Defendants' Motions to Dismiss or to Refer this Case to Bankruptcy Court (Docs. 7, 15) are **found moot**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to Amend Complaint (Doc. 28) **is granted in part and denied in part**.  The Motion is denied as to Count IV of the proposed First Amended Complaint and is granted in all other respects.

ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 16th day of November, 2021.