IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

THE HANOVER INSURANCE )
COMPANY, )
  )
      Plaintiff, )
  )
vs. ) Case No.  Case No. 1:20 CV 192 ACL
  )
FIRST MIDWEST BANK OF POPLAR )
BLUFF and DENNIS YOUNG, )
  )
      Defendants. )

**MEMORANDUM AND ORDER**

This matter is before the Court on the Motion to Dismiss of Defendant First Midwest

Bank of Poplar Bluff ("First Midwest").  (Doc. 54.)  The matter is fully briefed and ready for

disposition.

### I.        Background[1]

Hanover issued payment bonds and performance bonds to Harding Enterprises, LLC

("Harding Enterprises") for multiple public construction projects for which Harding Enterprises

won bids and performed work.  Hanover issued the bonds to guarantee Harding Enterprises'

performance obligations on these bonded projects and to ensure the payment obligations Harding

Enterprises had to its subcontractors and material suppliers.  In consideration of the issuance of

these bonds, Greggory Harding and Dawn Harding ("Hardings"), members of Harding

Enterprises, each executed a General Agreement of Indemnity ("GAI") in favor of Hanover.

---

[1]The Court's summary of the facts is taken from the First Amended Complaint, assumed as true
for the purpose of the instant motion only.

When Harding Enterprises began to struggle financially, the Hardings requested that Hanover provide Harding Enterprises with financial assistance to complete the performance of the work on the bonded projects.  Hanover and the Hardings entered into a Financing and Special Account Agreement on August 26, 2016 ("Financing Agreement").  Pursuant to the terms and conditions of the Financing Agreement, Hanover paid claims and advanced funds to Harding Enterprises in the total amount of $3,807,673.03.  These funds were to be used by Harding Enterprises for the sole purpose of paying labor and material costs incurred by it to perform work on the bonded contracts.

Harding Enterprises ultimately failed to complete performance or pay its subcontractors and suppliers, which constituted a default under the GAI.  As a result, Hanover's obligations under the bonds was triggered.  Hanover completed Harding Enterprises' performance obligations on the bonded projects and paid payment bond claims of subcontractors and suppliers.  Hanover suffered losses exceeding $5,000,000.  Hanover demanded collateral and reimbursement from the Hardings in the amount of $4,975,000, pursuant to its rights under the GAI.  The Hardings failed to post any collateral or reimburse Hanover.

In October 2016, Hanover discovered that the Hardings were misappropriating large sums of money they received from the bonded projects owners and from Hanover that were expressly required to have been used for Harding Enterprises' performances obligations on the bonded projects and payment to bonded subcontractors and suppliers (collectively, the "Bonded Proceeds").  After nearly all of the Bonded Proceeds had been paid by the bonded project owners to Harding Enterprises and then misappropriated, Hanover discovered the extent of the scheme.  Specifically, Hanover discovered that the Hardings had used cashier's checks and other forms of transfer to move the Bonded Proceeds through the financial system, ending in payments to the

Hardings; the Hardings' son, Josh Harding; the Hardings' benefactor, Mr. Young; the Hardings' lender, First Midwest; and for the benefit of their newly purchased ranch, Diamond H. Ranch.

The evidence regarding the fraudulent transfers was discovered through tracing analysis performed by Hanover during its prosecution of an Adversary Proceeding filed in the Hardings' bankruptcy case.  Mr. and Mrs. Harding filed a Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code on February 26, 2018.  On March 19, 2018, Harding Enterprises filed a voluntary petition for relief under Chapter 7.  During a hearing in the Hardings' bankruptcy proceedings, the Hardings testified that they engaged in so many cashier's check transactions to prevent the funds from being garnished or seized by creditors.

Hanover alleges that First Midwest knowingly received and benefited from the Hardings' transfer of Bonded Proceeds.  From July 2016 through January 2017, First Midwest issued over one hundred cashier's checks totaling $2,871,957 to the Hardings.  Hanover asserts that Young also benefitted from the receipt of Bonded Proceeds because the Hardings' loan indebtedness to him was paid.  Hanover contends that Young knew or was complicit with the Hardings' scheme to misappropriate the Bonded Proceeds and was closely involved in Harding Enterprises' bonded work.

In Count I of the First Amended Complaint ("Complaint"), Hanover asserts a fraudulent transfer claim against First Midwest under Missouri's Fraudulent Transfers Act.  Hanover seeks to void and attach payments received by Defendant First Midwest that Harding Enterprises allegedly made with the intent to hinder, delay and defraud its creditors, including Hanover.  In Count II, Hanover asserts a fraudulent transfer claim against Defendant Young.  Finally, in Count III, Hanover alleges a civil conspiracy to commit tortious act claim against First Midwest.

First Midwest has filed a Motion to Dismiss the claims against it—Counts I and III—for failure to state a claim upon which relief may be granted. Hanover opposes the Motion.

## II.     Standard

"To survive a motion to dismiss for failure to state a claim, the complaint must show the plaintiff 'is entitled to relief,' Fed. R. Civ. P. 8(a)(2), by alleging 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1063 (8th Cir. 2017) (en banc) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In reviewing a Rule 12(b)(6) motion, the Court accepts all factual allegations as true and construes all reasonable inferences in the light most favorable to the nonmoving party. *Usenko v. MEMC LLC*, 926 F.3d 468, 472 (8th Cir. 2019), *cert. denied*, 140 S. Ct. 607 (2019).  The Court does not, however, accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts. *Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019).  The complaint must "allege sufficient facts that, taken as true, 'state a claim to relief that is plausible on its face.'" *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1057 (8th Cir. 2017) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).  A facially plausible claim is one "that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Wilson v. Ark. Dep't of Human Servs.*, 850 F.3d 368, 371 (8th Cir. 2017) (internal quotation omitted).  In addressing a motion to dismiss, a court "may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010) (cited case omitted)

## III.     Discussion

First Midwest argues that Count I fails as a matter of law because the Complaint alleges

that the transferred property at issue belonged to Hanover, not the transferor.  First Midwest next argues that Count III fails to state a claim for civil conspiracy for the following reasons: (1) First Midwest is the only member of the purported conspiracy that is joined in this action; (2) the Complaint does not allege a meeting of the minds on the objective of the conspiracy; (3) the Complaint fails to allege that the alleged conspiracy benefitted First Midwest; (4) the Complaint's allegations of unlawful acts and means are insufficient; (5) the Complaint does not plausibly allege that First Midwest owed a duty to Hanover; and (6) the Complaint fails to adequately plead the underlying torts.   The undersigned will address these claims in turn.

### A.  Fraudulent Transfer (Count I)

In Count I, Hanover alleges that the Hardings effected the following transfers to First Midwest with the "actual intent to hinder, delay, or defraud one or more creditor, including chiefly Hanover:"

a.   9/15/2016 loan payment in the amount of $4,743.43

b.  9/15/2016 line of credit payment in the amount of $395,300.42

c.  9/16/2022 loan payment in the amount of $1,046.59

d.  9/27/2016 payment to First Midwest in the amount of $1,859.50

e.  10/14/2016 line of credit payment in the amount of $510,438.96

f.  10/14/2016 payment to First Midwest for the purchase of cashier's checks totaling $800,000

g.  11/4/2016 payment to First Midwest in the amount of $23,606.58

h.  11/8/2016 payment to First Midwest in the amount of $13,194.80

i.  11/9/2016 payment to First Midwest for a $12,000 cashier's check

j.  12/5/2016 line of credit payment in the amount of $602,542.88

5

k.   12/8/2016 payment to First Midwest in the amount of $9,500

l.   12/12/2016 payment to First Midwest in the amount of $32,288.71

m.   12/14/2016 payment to First Midwest in the amount of $425,000

n.   12/19/2016 payment to First Midwest in the amount of $50,000

o.   1/30/2017 payment for the purchase of a cashier's check in the amount of $200,000

(Doc. 46 at 17.)  Hanover seeks to void these transfers pursuant to Mo. Rev. Stat. § 428.039.

The Missouri Uniform Fraudulent Transfer Act ("MUFTA") consists of §§ 428.005 to

428.059.  Under § 428.024,

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor,
> whether the creditor's claim arose before or after the transfer was made or the
> obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor...."

§ 428.024.1.

"To set aside a transfer as fraudulent under MUFTA, it is necessary to show that the

transfer was made with an intent to hinder, delay, or defraud creditors." *Birkenmeier v. Keller*

*Biomedical, LLC,* 312 S.W.3d 380, 389 (Mo. Ct. App. 2010); *see* Section 428.024.  However,

intent to defraud is often difficult to prove by direct evidence. *Birkenmeier*, 312 S.W.3d at 389.

Missouri courts, therefore, may look to a number of "badges of fraud" to infer intent to defraud

from the factual circumstances. *Id.*  Generally, "[f]or a transfer to be found fraudulent, several

indicia of fraud must be shown.  More than one badge of fraud must be present." *Id.* (citation

omitted).

First Midwest argues that Hanover must allege that Harding Enterprises, as the transferor,

actually owned that property that it transferred.  Midwest argues that Hanover's fraudulent

transfer claim necessarily fails because the Complaint alleges that Harding Enterprises "held no

interest in the 'Bonded Proceeds.'"  (Doc. 55 at 9.)

6

Hanover responds that First Midwest misstates Hanover's position and the facts supporting its claim.  Hanover argues that its position is not that the Hardings had no interest whatsoever in the Bonded proceeds.  Instead, Hanover notes that the Complaint alleges that the Hardings had contracts with various government entities and that the Bonded Proceeds represented accounts receivable owed to and collected by Harding Enterprises for work performed on the bonded projects.  Hanover contends that these receivables were an "asset" and constituted "property" within the meaning of the MUFTA.

Under Missouri law, a creditor is a person who has a claim, and a claim is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Mo. Rev. Stat. § 428.009(3)-(4) (emphasis added).  A "debtor" is "a person who is liable on a claim."  Mo. Rev. Stat. § 428.009(6).  The MUFTA defines a "transfer" broadly as "every mode…of disposing of or parting with an asset or an interest in an asset…"  *Id.* § 428.009(12). Finally, an "asset" is defined as "property of a debtor."  *Id.* § 428.009(2).

First Midwest relies upon *Grand Laboratories, Inc. v. Midcon Labs of Iowa*, 32 F.3d 1277, 1281-82 (8th Cir. 1994), for its position that Hanover's fraudulent conveyance claim fails. In *Grand Laboratories*, the Eighth Circuit applied Iowa fraudulent conveyance law to the claim before it under the fraud exception to the doctrine of successor liability.  The Court stated:

> A fraudulent conveyance is...a transaction by means of which the owner of real or personal property has sought to place the land or goods beyond the reach of his creditors, or which operates to the prejudice of their legal or equitable rights. To recover on a fraudulent conveyance claim, a plaintiff-creditor must first show that the transferor actually owned the property that it allegedly fraudulently transferred. Moreover, the plaintiff-creditor must show that it was prejudiced by a transfer of assets. Prejudice requires the creditor to show that [it] would have received something which has become lost to [it] by reason of the conveyance.

7

*Id.* at 1281–82 (internal quotations and citations omitted).  The Court held that the plaintiff corporation did not produce sufficient evidence that the predecessor corporation fraudulently transferred assets to a successor corporation, because the predecessor corporation did not own the trade secrets at issue.  *Id.* at 1282.  Instead, the plaintiff corporation claimed it owned the trade secrets and that the predecessor corporation stole them.  *Id.*  The Court stated that a transfer of property in which the transferor has "neither legal nor equitable title" does not work to defraud the transferor's creditors.  *Id.*

The facts of the instant case are distinguishable from those of *Grand Laboratories*.  Here, Hanover issued bonds to guarantee Harding Enterprises' performance obligations on the bonded projects and to ensure the payment obligations Harding Enterprises had to its subcontractors and material suppliers.  (Doc. 46 at 3.)  Harding Enterprises received revenue for work performed on the bonded projects that were to be used for the payment of subcontractors and suppliers pursuant to the bonded contracts.  These receivables—the Bonded Proceeds—were obtained lawfully by Harding Enterprises.  When Harding Enterprises failed to pay its obligations under the bonded contracts and Hanover provided financial assistance to Harding Enterprises, Hanover became a creditor.  The Complaint alleges that the Hardings fraudulently transferred the Bonded Proceeds to First Midwest, and that First Midwest benefitted financially[2] from the transfers when the Hardings paid down their line of credit using Bonded Proceeds.  Hanover alleges that it, as a creditor of the Hardings, was defrauded by the transfer of the Bonded Proceeds to First Midwest.

---

[2]The Eighth Circuit noted that its analysis in *Grand Laboratories* "might be different had [the transferee] prospered financially by exploiting [the plaintiff's] trade secrets."  32 F.3d at 1282 n. 6.

In sum, the Court rejects First Midwest's strict interpretation of the language of the MUFTA.  The MUFTA defines "transfer" broadly, to include the conveyance of any asset or any interest in an asset.  As the Seventh Circuit has recognized:

> [F]raudulent conveyance doctrine ... is a flexible principle that looks to substance, rather than form, and protects creditors from any transactions the debtor engages in that have the effect of impairing their rights.

*Boyer v. Crown Stock Distribution, Inc.*, 587 F.3d 787, 793 (7th Cir. 2009) (citation omitted). The Court concludes that, when all reasonable inferences are drawn in Hanover's favor, Hanover has sufficiently alleged that a "transfer" occurred under MUFTA.  Thus, First Midwest's Motion to Dismiss Count I will be denied.

### B.  Civil Conspiracy (Count III)

The elements of a civil conspiracy claim are: "(1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful overt acts, and (5) resulting damages. The essence of a civil conspiracy is an *unlawful* act agreed upon by two or more persons." *Aguilar v. PNC Bank, N.A.*, 853 F.3d 390, 403 (8th Cir. 2017) (quoting *Mackey v. Mackey*, 914 S.W.2d 48, 50 (Mo. Ct. App. 1996)) (emphasis in original).

First Midwest first argues that Hanover's civil conspiracy necessarily fails, because First Midwest is the only purported conspirator joined in this action.  First Midwest acknowledges that the undersigned already considered this argument when First Midwest raised it in its opposition to Hanover's Motion to Amend.  Specifically, the undersigned relied upon the holding in *Envirotech, Inc. v. Thomas* that "'all the conspirators need not be joined [in a civil conspiracy claim]; an action may be maintained against but one,'" in rejecting First Midwest's claim that the addition of a civil conspiracy claim would be futile.  259 S.W.3d 577, 586 (Mo. Ct. Ap. 2008)

9

(quoting *Grubb v. Curry*, 72 S.W.2d 863, 864 (Mo. Ct. App. 1934)).  First Midwest, however,

contends that *Envirotech* and *Grubb* misstate the law on this point.  First Midwest notes that the

Missouri Supreme Court more recently held, in *Central Trust & Investment Co. v.  Signalpoint*

*Asset Management, LLC*, 422 S.W.3d 312, 324-25 (Mo. 2014) ("Central Trust"), that a plaintiff

asserting a civil conspiracy claim must sue at least two members of the alleged conspiracy.

Hanover responds that the Court in *Central Trust* did not hold that at least two members

of an alleged conspiracy must be named to state a claim.  Instead, Hanover contends that the

Court was simply making the point that civil conspiracy is not a separate and distinct action, but

is a means of extending liability to co-conspirators.  Hanover further argues that *Central Trust*

has never been cited for the proposition suggested by First Midwest.

After considering the parties' additional briefing on this issue, the Court reconsiders its

earlier ruling and finds that Missouri law requires that a plaintiff seeking to recover under a civil

conspiracy theory must sue at least two members of the alleged conspiracy.

The Missouri Supreme Court in *Central Trust* unambiguously held that at least two

members of an alleged conspiracy must be joined to state a civil conspiracy claim.   The Court

stated as follows:

> "Although civil conspiracy has its own elements that must be proven, it is
> not a separate and distinct action." *Western Blue Print Co.,* 367 S.W.3d at 22.
> "'[R]ather, it acts to hold the conspirators jointly and severally liable for the
> underlying act.'" *Id.* The doctrine of joint and several liability allocates the
> financial burden of harm among multiple parties at fault for the plaintiff's injuries.
> *Gramex Corp. v. Green Supply, Inc.,* 89 S.W.3d 432, 439-40 (Mo. banc 2002).
> "Joint and several liability depends on the existence of two or more defendants."
> *Kibbons v. Union Elec. Co.,* 823 S.W.2d 485, 491 (Mo. banc 1992).
>      "[A] cause of action is moot when the question presented for decision
> seeks a judgment upon some matter which, if the judgment was rendered, would
> not have any practical effect upon any then existing controversy." *State ex rel.*
> *Reed v. Reardon,* 41 S.W.3d 470, 473 (Mo. banc 2001) (internal quotation marks
> and citations omitted). SignalPoint is the only remaining defendant in this case
> because Central Trust voluntarily dismissed its claims against Kennedy and ITI in

the circuit court during the pendency of this appeal. Thus, there can be no joint and several liability. *See Kibbons,* 823 S.W.2d at 491. Since the only effect of a claim of civil conspiracy is to hold multiple defendants jointly and severally liable, Central Trust's claim of civil conspiracy is moot. *See Western Blue Print Co.,* 367 S.W.3d at 22; *State ex rel. Reed,* 41 S.W.3d at 473.

422 S.W.3d at 324-25.  This decision post-dated *Envirotech* and has not been overruled.

Further, this Court[3] cited *Central Trust* for this proposition in *Presson v. Haga*, No. 1:18-CV-00099, 2018 WL 4279445, at *3 (E.D. Mo. Aug. 31, 2018).  In *Presson*, the only remaining defendant argued that the plaintiffs' conspiracy claim must fail because under Missouri law, a conspiracy claim is not an independent claim.  The Court agreed, stating:

> It has long been established under Missouri law that conspiracy is not a separate and distinct cause of action, but merely a method of asserting joint and several liability as between defendants. *Central Trust and Inv. Co. v. Signalpoint Asset Mgmt., LLC*. 422 S.W.3d 312, 324-325 (Mo. 2014) ("civil conspiracy ... is not a separate and distinct action"); *Chmieleski v. City Prod. Corp.,* 660 S.W.2d 275, 286 (Mo. App. W.D. 1983) ("if no action on the case lies, no cause of action for conspiracy may be maintained"). Indeed, "a conspiracy of itself furnishes no cause of action, because from the mere forming of it no possible damages can accrue." *Darrow v. Briggs*, 169 S.W. 118, 125 (Mo. 1914). Thus, when only one defendant remains in a case, conspiracy—as a method of asserting joint and several liability—becomes moot. *Central Trust*, 422 S.W.3d at 325 (finding plaintiff's civil conspiracy claim moot when it voluntarily dismissed claims against the other conspirators and stating "the only effect of a claim of civil conspiracy is to hold multiple defendants jointly and severally liable"). As the sole remaining defendant in the case, Defendant is right to argue Plaintiffs' conspiracy claim (Count VIII) cannot stand; accordingly, this claim will be dismissed as against Defendant.

2018 WL 4279445, at *3.

In this diversity case, the Court applies "Missouri law as declared by the State's highest court, the Supreme Court of Missouri." *Council Tower Ass'n v. Axis Specialty Ins. Co*., 630 F.3d 725, 728 (8th Cir. 2011) (internal citations omitted)).  "If the Missouri Supreme Court has not addressed the issue before [the district court, that court] must ascertain what rule the Missouri

---

[3]Senior United States District Judge Stephen N. Limbaugh, Jr.

Supreme Court would apply....When determining what the Missouri Supreme Court would do, [the district court] often turn[s] to the decisions of the Missouri Court of Appeals for guidance." *Rucci v. City of Pacific*, 327 F.3d 651, 652-53 (8th Cir. 2003) (internal citations omitted).

Here, the Missouri Supreme Court has held that a civil conspiracy claim is rendered moot when only one defendant remains in the action. *Central Trust & Investment Co.*, 422 S.W.3d at 324-25.  This Court has relied on *Central Trust* to similarly find that a conspiracy claim cannot stand against a single conspirator defendant. *Presson*, 2018 WL 4279445 at \*3.  Although a Missouri appellate court came to the opposite conclusion in *Envirotech*, this Court must apply the law as decided by the Missouri Supreme Court.

Hanover has not joined Harding Enterprises nor any of the other Harding entities in this action.  Thus, Hanover's civil conspiracy claim fails to state a claim under Missouri law, and will be dismissed.  Because First Midwest's first argument for dismissal was dispositive, the Court need not discuss First Midwest's additional arguments for dismissal.

Accordingly,

 **IS HEREBY ORDERED** that Defendant First Midwest Bank of Poplar Bluff's Motion to Dismiss (Doc. 54) **is granted in part and denied in part**.  The Motion is **granted** as to Count III of the First Amended Complaint and is **denied** in all other respects.

ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of June, 2022.

12